IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AKRAM VAZIRI,

    *Plaintiff*,

    v.

LEVINDALE HOSPITAL/
LIFE BRIDGE HEALTH.

    *Defendants*.

Civil Action No. ELH-17-1553

## MEMORANDUM OPINION

Akram Vaziri, the self-represented plaintiff, filed this employment discrimination action on June 6, 2017, against her former employer, Levindale Hospital ("Levindale"), and against Life Bridge Health ("LifeBridge"). ECF 1 (Complaint).[1] Plaintiff alleges discrimination on the basis of her national origin (Iranian); religion (unspecified); age (unspecified); and disability (her daughter's "Generalized Anxiety disorder"), as well as retaliation. *Id.* at 4-8. In particular, plaintiff claims that she was denied training, denied a preferable shift at the hospital, and ultimately terminated as a result of this discrimination and in retaliation for filing a discrimination complaint. *Id.*

Suit is founded on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 to 12117. ECF 1 at 5.

---

[1] Levindale's more complete name appears to be "Levindale Hebrew Geriatric Center and Hospital." *See* ECF 1-1 at 1; *see also About Levindale – Geriatric Center in Baltimore MD*, http://www.lifebridgehealth.org/Levindale/AboutLevindale.aspx. LifeBridge is the parent company.

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants filed a motion to dismiss nearly all of plaintiff's claims. ECF 5. The motion to dismiss is supported by a memorandum of law (ECF 5-1) (collectively, "Motion"). In particular, defendants seek to dismiss LifeBridge as a defendant (ECF 5-1 at 7-8); to dismiss plaintiff's claims of discrimination based on religion, age, and disability as unexhausted (*id.* at 8-10); to dismiss all of plaintiff's discrimination claims for failure to state a claim; and to restrict plaintiff's retaliation claim to events that occurred after December 31, 2014. *Id.* at 14-16.

Plaintiff opposes the Motion. ECF 13 ("Opposition"). Defendants replied. ECF 14 ("Reply"). More than two months after defendants' Reply, plaintiff moved for leave to file a surreply. ECF 16 ("Motion for Surreply"). Plaintiff attached over 150 pages of exhibits to her proposed surreply, which were not posted to ECF. Defendants oppose the Motion for Surreply. ECF 17. Plaintiff did not reply.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion for Surreply, and I shall grant the Motion in part and deny it in part. Plaintiff may amend her Complaint by March 30, 2018.

## I. Factual and Procedural Background[2]

Plaintiff alleges that she began her employment with Levindale on March 21, 2011, as a Nursing Supervisor. ECF 1 at 5. According to plaintiff, she was "denied Training that was given to less qualified & younger employees . . . who were subsequently selected for positions denied to [plaintiff]." *Id.* at 4. Furthermore, over the course of her tenure at Levindale, plaintiff allegedly "reported wrong doing [sic] of some of the employees to [her] supervisor," Virginia

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I am also mindful that plaintiff is *pro se*, and therefore I must construe her submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Saunders. *Id.* at 5. Plaintiff claims that Saunders "provoked those employees against" Vaziri. *Id.*

Vaziri asserts that her daughter, whose age does not appear to be mentioned, suffers from "Generalized Anixiety disorder" (*id.* at 8) and that plaintiff therefore requested a position with a day shift so she could be home with her daughter at night. *Id.* at 5. Vaziri complains that her request was denied, yet the requests of "younger, less experienced" employees were granted. *Id.*

Plaintiff also notes that she "was the only Iranian nurse in the Hospital's employ," and asserts that she has "complained of being discriminated against on more than one occasion." *Id.* at 4. It appears that she complained of such discrimination on October 22, 2015, and "on October 23, 2015 [she] was placed on a Performance Improvement Plan (PIP) without clear explanation." *Id.* As a result, she filed a Charge of Discrimination with the Baltimore Community Relations Commission and the EEOC on October 27, 2015. *Id.*; *see* ECF 1-1 at 2. In November 2015, plaintiff's employment with Levindale was terminated. ECF 1 at 4.

Plaintiff attached her EEOC charge to the Complaint (ECF 1-1 at 2, "Charge"), as well as the EEOC's Dismissal and Notice of Rights, which was issued on March 9, 2017. *Id.* at 1. The Charge, filed on October 27, 2015, named both defendants. *Id.* Vaziri checked boxes on the Charge form indicating that she was discriminated against on the basis of national origin, and that she suffered retaliation. *Id.* at 2. In her description of the claims, Vaziri stated that she had "not been selected for a day shift position while younger, less experienced employees have been given day shift positions." *Id.* She also stated that she believed she had been retaliated against because of her national origin. *Id.*

The Charge contains no mention of Vaziri's religion or her age. Nor does it include any facts as to LifeBridge. But, plaintiff entered her date of birth in the corresponding box on the

Charge form, indicating that she was born in 1956. ECF 1-1 at 2. Therefore, Vaziri was over 40 years of age when she filed suit in June 2017.

Also attached to plaintiff's Complaint is the EEOC's Dismissal and Notice of Rights. *Id.* at 1. The EEOC closed the matter on March 9, 2017, and informed plaintiff of her right to file a lawsuit within 90 days. *Id.* This suit followed on June 6, 2017. ECF 1.

Although LifeBridge is named in the suit, it is not mentioned anywhere in the underlying facts. On her civil complaint form, plaintiff checked boxes indicating that the discriminatory conduct of which she complained included her termination, defendant's failure to promote her, and retaliation. *Id.* at 6. She checked a box indicating that the defendants "are still committing these acts against me," although she did not explain the basis for her assertion. *Id.* Plaintiff also checked boxes indicating that defendants discriminated against her on the basis of her religion, national origin, age, and disability. *Id.* In the Complaint, plaintiff identified her national origin as Iranian (*Id.* at 4) and the disability as belonging to her daughter. *Id.* at 5. However, she did not mention her religion or her age.

Defendants moved to dismiss nearly all of plaintiff's claims on August 11, 2017, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF 5. As noted, defendants seek to dismiss LifeBridge as a defendant (ECF 5-1 at 7-8); to dismiss plaintiff's religion, age, and disability discrimination claims as unexhausted (*id.* at 8-10); to dismiss all her discrimination claims for failure to state a claim; and to restrict her retaliation claim to events that occurred after December 31, 2014. *Id.* at 14-16.

Plaintiff's Opposition responds to some aspects of the Motion. ECF 13 at 3-4. It also contains a more detailed narrative of the alleged events underlying plaintiff's claims, styled as "Plaintiff's amendment to statement of Claim # III." *Id.* at 1-3. Defendants replied, opposing

plaintiff's attempt to amend as noncompliant with the Federal Rules of Civil Procedure and the Local Rules of this Court. ECF 14 at 1-2. Defendants also assert that the proposed amendment is futile. *Id.* at 2-8.

## II.     Motion for Surreply

More than two months after defendants filed their Reply, plaintiff filed her Motion for Surreply. ECF 16. The proposed surreply clarifies that plaintiff's intent was not to amend her complaint via her Opposition, and contains another clarified set of factual allegations. *Id.* Plaintiff attached over 150 pages of exhibits to her proposed surreply. As indicated, the exhibits are not docketed on CM/ECF. Defendants oppose plaintiff's Motion for Surreply. ECF 17.

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). However, a surreply is generally not permitted where the reply is merely responsive to an issue raised in the opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

Plaintiff's Motion for Surreply does not assert that defendants raised new issues for the first time in their Reply. Rather, plaintiff states: "The defendants raised several issue in its [*sic*] motion. The Plaintiff seeks a fair opportunity to respond to those issues. Accordingly the

Plaintiff, Akram Vaziri request that the court accept a brief surreply for this purpose." ECF 16 at 1.

In my view, a surreply is not warranted. Defendants did not raise any issues in their Reply that were not responsive to plaintiff's Opposition. *See Khoury*, 268 F. Supp. 2d at 605-06. Moreover, even if I were to consider plaintiff's surreply, that document does not contain arguments opposing defendants' Motion so much as it contains a retelling of the facts underlying plaintiff's claims. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also Mylan Laboratories, Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

In addition, plaintiff's surreply comes with over 150 pages of exhibits related to her employment history, including email chains between plaintiff and her coworkers, work schedules, prior complaints to her supervisors, and documents related to plaintiff's Performance Improvement Plan ("PIP"). These documents may be relevant to the claims, but they do not "give rise to the legal rights asserted," and so are not integral to the Complaint. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted). At this stage of litigation, it is not appropriate to consider evidence beyond the pleadings that is not integral to the complaint. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Therefore, I shall deny the Motion for Surreply.

### III.  Motion to Dismiss - Legal Standards

### A.  Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).  A factual challenge can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction.  *Id.*

Defendants bring a factual challenge because they argue that Vaziri failed to exhaust her administrative remedies under Title VII, the ADEA, and the ADA, in regard to her claims based on religion, age, and disability.  ECF 5-1 at 8.  Defendants argue that the failure to exhaust deprives the Court of subject matter jurisdiction as to these claims.  *Id.*

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction."  *Kerns*, 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined

with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

## IV.    Discussion

As indicated, defendants first contend that LifeBridge should be dismissed as a defendant because plaintiff has not pleaded sufficient facts showing a plausible employment relationship with LifeBridge. ECF 5-1 at 7-8. Defendants also urge dismissal of plaintiff's religious, age, and disability discrimination claims under Fed. R. Civ. P. 12(b)(1), on the ground that Vaziri failed to exhaust her administrative remedies as to those allegations, as required by Title VII, the ADEA, and the ADA. *Id.* at 8-10. Furthermore, defendants contend that under Fed. R. Civ. P. 12(b)(6), plaintiff has failed to state a claim for national origin discrimination and age

discrimination. *Id.* at 10-14. And, defendants assert that plaintiff's retaliation claims should be limited to claims arising from her termination. *Id.* at 14-16.

## A. LifeBridge as a Defendant

Defendants assert that LifeBridge was not Vaziri's employer. ECF 5-1 at 7. Moreover, they argue that Vaziri's Complaint against defendants alleges no facts which would suggest that LifeBridge violated plaintiff's rights under any statute. *Id.* Defendants emphasize that, although plaintiff lists LifeBridge as a defendant, she notes her "Place of Employment" as Levindale Hospital, only. *Id.*; *see* ECF 1 at 2, 3. LifeBridge is not mentioned anywhere else in the Complaint.

Plaintiff responds, asserting that "Levindale Hospital is related and part of Life Bridge Health company." ECF 13 at 3. Moreover, plaintiff avers that she was referred to an employee of LifeBridge in regard to her discrimination claim. *Id.*

To the extent that plaintiff alleges that LifeBridge is liable for the discrimination of Levindale employees because it is the parent company of Levindale, her claim must fail. In *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987), the Fourth Circuit said: "A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." Plaintiff has not alleged even a single fact to support a claim of such control, nor does she set forth any facts to suggest that the two entities function as one.

As for plaintiff's apparent referral to a LifeBridge human resources employee, that allegation was not made in the Complaint. And, plaintiff may not amend her pleadings via her Opposition. *See S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184. If plaintiff

possesses additional facts suggesting that LifeBridge was in fact her employer, she may amend her Complaint by March 30, 2018.

This is not to say that LifeBridge was not Vaziri's employer. Rather, Vaziri has not pleaded facts sufficient to sustain a plausible claim of employment discrimination against LifeBridge. "A plaintiff must . . . allege sufficient facts showing that an employment relationship is plausible." *Harris v. Housing Auth. of Baltimore City*, WDQ-14-3395, 2015 WL 5083502, at *4 (D. Md. Aug. 26, 2015) (citing *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 603 (D. Md. 2014)).

Because plaintiff alleges no facts in her Complaint suggesting that LifeBridge was her employer and discriminated against her, I shall dismiss LifeBridge as a defendant, without prejudice.

### B. Exhaustion of Religious, Age, and Disability Discrimination Claims

Under Title VII and the ADEA, a plaintiff must file a charge with the EEOC before filing suit in a federal court. 42 U.S.C. § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); *see Calvert Grp.*, 551 F.3d at 300. And, "the ADA incorporates [Title VII's] enforcement procedures . . . including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal citations omitted). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see also Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them.").

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor*, 681 F.3d at 593.

An aggrieved person must file a complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 12117(a) (ADA); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. *See, e.g.*, *Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017). In this instance, plaintiff filed her Charge with the Baltimore Community Relations Commission, a local agency with authority over employment discrimination claims. ECF 1-1 at 2; *see Borders v. Policy Studies, Inc.*, RDB-07-638, 2008 WL 3200725, at *4 (D. Md. Aug. 5, 2008).

The exhaustion requirements of Title VII, the ADEA, and the ADA also function as a jurisdictional bar in federal court, where plaintiffs have failed to comply with it. *See Balas*, 711 F.3d at 406. Failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof.'" *Id*. at 407-08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, *id*. at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015), is instructive. In *Belyakov*, the plaintiff applied for a job with the National Institutes of Health

through the defendant staffing firm.  *Id.* at 432.  When he did not get the job, the plaintiff filed suit against defendant, alleging age discrimination under the ADEA, national origin discrimination under Title VII, and retaliation under Title VII.  In granting summary judgment in favor of the staffing agency as to the national origin claim, the district judge said: "Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national . . . in the narrative portion of his EEOC charge. . . ."  *Id.* at 440.  Instead, plaintiff "asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII."  *Id.*  Therefore, the court determined that plaintiff failed to exhaust his national origin claim.  *Id.*; *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (finding that plaintiff failed to exhaust her administrative remedies as to discrimination on the basis of age because she did not "did not check the box for discrimination based on age, and there is no reference to age discrimination in the narrative portion of the document"); *Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (same, for disability discrimination).

Here, plaintiff did not check the boxes for religion, age, or disability on her Charge.  *See* ECF 1-1 at 2.  Rather, she checked only the boxes next to "retaliation" and "national origin." *See id*.  Plaintiff did, however, refer to a potential age discrimination claim in her description. She wrote: "I have not been selected for a day shift position while younger, less experienced employees have been given day shift positions."  *Id.*  The Charge mentions that plaintiff "applied for positions on the day shift to facilitate caring for [her] disabled child."  *Id.*  Plaintiff did not state that she was discriminated against as a result of her daughter's disability.  And, the Charge does not mention religion.

### 1. Religious Discrimination Claim

As noted, plaintiff's Charge does not in any way refer to religion. *See* ECF 1-1 at 2. In her Opposition, she simply states: "I do not know what Levindale Hospital/ Life bridge [sic] Health call this. Age Discrimination, National Origin Discrimination , Religious Discrimination, or Retaliation. Any way , I was discriminated and My daughter suffered." ECF 13 at 4.

Because Vaziri did not check the box for religious discrimination on her Charge, and did not describe any facts which would give rise to an inference of religious discrimination in the description on her Charge, I conclude that she did not exhaust her administrative remedies with regard to her religious discrimination claim. Therefore, that claim must be dismissed, without prejudice.

### 2. Disability Discrimination Claim

On the Charge, plaintiff did not check the box indicating that she experienced discrimination on the basis of disability. In her description of the particulars, plaintiff alleged that she "applied for positions on the day shift to facilitate caring for [her] disabled child." ECF 1-1 at 2. Vaziri did not suggest that she suffered any adverse employment actions as a result of her daughter's disability.

Plaintiff asserts in her Opposition: "Defendants knew about [her] daughter['s] sickness and disability." ECF 13 at 3. She then contends that "[o]n many occasions [she] talked to [her] supervisors" about her daughter's health. *Id.* at 4. However, because plaintiff did not note on her Charge that she was alleging disability discrimination, and did not allege any facts in the narrative portion of the Charge that would have put defendants on notice that she was alleging disability discrimination, I cannot find that the claim of disability discrimination is "reasonably

related" to the claims made in plaintiff's Charge.  *See Sydnor*, 681 F.3d at 595.  Therefore, to the extent plaintiff has alleged disability discrimination in her Complaint, that claim is dismissed.

### 3.  Age Discrimination Claim

As noted, plaintiff did not check the box for age discrimination on her Charge.  *See* ECF 1-1 at 2.  However, she did state in the particulars that she had applied for "numerous" day shift positions, including on October 6, 2015, and that following each application, she was not "selected for a day shift position while younger, less experienced employees have been given day shift positions."  *Id.*  Further, she alleged that she was "denied training that was given to less qualified employees," two of whom she named.  *Id.*  Whether plaintiff has exhausted her administrative remedies thus depends on whether these statements could have allowed for a reasonable investigation.

Even where a plaintiff fails to check a box on an EEOC charge, courts have allowed claims to proceed where the attached narrative could have led the EEOC to investigate such a claim.  *See Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 517 n.9 (D. Md. 2002), *aff'd*, 79 F. App'x 602 (4th Cir. 2003); *see also Sillah v. Burwell*, 244 F. Supp. 3d 499, 510 (D. Md. 2017).  Here, plaintiff's Charge has barely alleged the "'who, what, when, and where' of her [age discrimination] claim sufficient to allow for a reasonable investigation." *Sillah*, 244 F. Supp. 3d at 510 (citations omitted).  She alleged that she was denied a position on a specific occasion, while younger employees (presumably outside of the protected class) were given that position.  ECF 1-1 at 2.

Whether Vaziri adequately exhausted her administrative remedies in regard to her age discrimination claim is a close question.  At this time, I shall assume, without deciding, that

plaintiff did exhaust as to the claim. Therefore, I shall consider the age discrimination claim in the context of the Rule 12(b)(6) motion to dismiss.

### C. Failure to State a Claim

Defendants have also moved to dismiss plaintiff's national origin and age discrimination claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). They also seek to limit Vaziri's retaliation claim.

Plaintiff does not allege acts of direct discrimination. Therefore, at a trial, her claims would be evaluated under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (stating that the "*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"); *see also Smyth-Riding v. Sciences And Engineering Services, LLC*, 699 F. App'x 146, 152 (4th Cir. 2017) ("Retaliation claims can be proven by two avenues: one path looks to direct or circumstantial evidence of discriminatory motive while the other proceeds under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."), *petition for cert. filed* (U.S. Dec. 15, 2017) (No. 17-879).

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (citation omitted). "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Id.* (citation omitted).

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied sub nom. City of Greensboro, N.C. v. BNT Ad Agency, LLC*, 138 S. Ct. 558 (2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies." The question at the motion to dismiss stage is whether plaintiff has stated "a plausible claim for relief under Title VII or the ADEA." *Ciociola v. Baltimore City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016). Therefore, at a minimum, plaintiff must plead facts that make it plausible that she was discriminated against on the basis of her national origin and age, and subjected to retaliation as a result of her protected activities. *See id.*

I am mindful that plaintiff is *pro se* and that as such I must construe her pleadings liberally. *Erickson*, 551 U.S. at 94. However, "[d]espite [her] pro se status, [plaintiff] must still make 'a plausible claim for relief.'" *Jackson v. Convergent Outsourcing, Inc.*, RDB-13-1755, 2014 WL 722116, at *1 (D. Md. Feb. 25, 2014) (citing *Ibqal*, 556 U.S. at 678).

### 1. National Origin Discrimination

Plaintiff's claim of national origin discrimination must fail, because she has not alleged any facts in her Complaint that could plausibly suggest that her national origin was the basis for any adverse employment action. Plaintiff alleged only that she "was the only Iranian nurse in the Hospital's employ and [she had] complained of being discriminated against on[] more than one occasion." ECF 1 at 4. She does not explain when those occasions were, or what allegedly happened.

The only suggestion of any discrimination in the Complaint is the allegation that "on October 23, 2015 [Vaziri] was placed on a Performance Improvement Plan (PIP) without clear

explanation." As a threshold matter, "being placed on a PIP is not itself actionable [as an adverse employment action] under Title VII." *Sillah*, 244 F. Supp. 3d at 517 (citing cases). Because plaintiff does not allege any facts that would indicate that she was discriminated against on the basis of her national origin, that claim must be dismissed, without prejudice.

### 2. Age Discrimination

The ADEA "'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) (quoting *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)); *see also McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995). It protects individuals 40 years of age or older. *See* 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg, Va.*, 386 F. App'x 411, 413-14 (4th Cir. 2010) (per curiam). The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . or . . . to reduce the wage rate of any employee in order to comply with this chapter." 29 U.S.C. §§ 623(a)(1), 623(a)(3); *see also Hartman v. Univ. of Md. at Balt.,* 595 F. App'x 179, 181 (4th Cir. 2014) (per curiam); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

To plead adequately a claim of employment discrimination under the ADEA, a plaintiff typically must allege: "(1) [s]he is a member of a protected class—that is, 40 years or older; (2) [s]he suffered an adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or [s]he was replaced by a substantially younger person." *Bodkin*, 386 F. App'x at 413-14 (citations omitted) (alterations in *Bodkin*); *see also* 29 U.S.C. § 623(a). A plaintiff bringing a disparate treatment claim under the ADEA "must prove

that age was not merely a motivating factor of the challenged adverse employment action but was in fact its 'but-for' cause." *Hartman*, 595 F. App'x at 181 (citing *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013), and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).

Even if plaintiff exhausted her administrative remedies for her age discrimination claim, her Complaint does not state a plausible claim on which relief can be granted. She alleges that other employees received day shift positions and training, and that those employees were "younger" and "less qualified." ECF 1 at 4. However, she does not allege any other facts that can offer a plausible basis for the inference that she was denied the position or training *because of* her age. She does not allege any facts suggesting that these other employees were similarly situated, and she does not indicate how much younger the other employees were.

In her Opposition, plaintiff does not offer any further justification for her age discrimination claim. Rather, she asserts, ECF 13 at 4: "The age discrimination is implied in EEOC document which says : the positions were offered to less experienced /young employees( [sic] Ms. Irene ( LUN) [sic] rather to me ( my date of Birth is 08/10/1956)." Construed liberally, this may establish that plaintiff was a member of a protected class. She included her date of birth on her Charge, which indicated that she was over 40 years old (ECF 1-1 at 2), although she does not mention her age in the Charge or the Complaint. And, she has alleged that she suffered an adverse employment action when she was denied certain training, denied her desired shift, and later terminated. ECF 1 at 4. However, plaintiff has not alleged satisfactory job performance. *See Coleman*, 626 F.3d at 190. Nor has she alleged that the other employees who received day shift positions and training were similarly situated. *See id.* Moreover, she has not alleged any

facts that would suggest her age was a "but-for cause" of the alleged adverse employment action. *See Hartman*, 595 F. App'x at 181.

As the Supreme Court said in *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See also Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014).

Accordingly, I shall dismiss plaintiff's age discrimination claim, without prejudice.

### D. Retaliation Claim

Plaintiff filed her Charge on October 27, 2015 (ECF 1-1 at 2), and alleges that she was terminated in November 2015. ECF 1 at 4. She also alleges that at certain times during her employment, she "reported wrong doing . . . to her supervisor," and was thereafter treated badly by her supervisor and other employees. *Id.* at 5. Furthermore, she alleges that she "complained of being discriminated against on[] more than one occasion," including an instance shortly before filing her Charge. *Id.* at 4. And, she notes that she filed the Charge on October 27, 2015, and was terminated soon after, on November 11, 2015. ECF 13 at 4; *see also* ECF 1 at 4.

Defendants appear to concede that Vaziri has stated a cognizable retaliation claim. ECF 5-1 at 14. However, they move to narrow the claim, arguing that any claims arising prior to December 31, 2014, are time-barred. ECF 5-1 at 14-15. Defendants argue that events occurring prior to this date, 300 days before plaintiff filed her Charge, are barred by the limitations period of 42 U.S.C. § 2000e-5(e)(1).

The Fourth Circuit has stated that "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."

*Goodman*, 494 F.3d at 464. In "relatively rare circumstances," an exception to this rule may be made, such as "where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.*

Such facts are not clearly present here. Vaziri has alleged retaliation in her Charge, and checked the box indicating that the discrimination against her was a "continuing action." ECF 1-1 at 2. Although defendants assert that any decisions made prior to December 31, 2014, were "legally discrete acts," and therefore subject to the statute of limitations, such a finding is not compelled from Vaziri's Complaint.

## V. Conclusion

For the reasons stated above, I shall DENY plaintiff's Motion for Surreply. I shall GRANT defendants' Motion in part, dismissing LifeBridge as a defendant, and dismissing plaintiff's claims for religious discrimination, national origin discrimination, age discrimination, and disability discrimination, all without prejudice. Plaintiff may amend her Complaint by March 30, 2018. And, as to plaintiff's retaliation claim, I shall DENY defendants' Motion. That claim will go forward whether or not plaintiff amends her Complaint.

An Order follows, consistent with this Memorandum Opinion.


Date: March 8, 2018                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge